Monte D. Beck
Justin P. Stalpes
BECK & AMSDEN, pllc
1946 Stadium Drive, Suite 1
Bozeman, MT 59715
Tel:     (406) 586-8700
Fax:     (406) 586-8960
MBeck@becklawyers.com
justin@becklawyers.com

J. David Slovak
Mark M. Kovacich
Ross Johnson
LEWIS, SLOVAK, KOVACICH & SNIPES, pc
PO Box 2325
Great Falls, MT 59403
Tel:     (406) 761-5595
Fax:     (406) 761-5805
Tom@lsklaw.net
dave@lsklaw.net
Mark@lsklaw.net

*Attorneys for Defendants*

* * * * * * *

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

* * * * * * *

| | |
|---|---|
| ATLANTIC RICHFIELD COMPANY, a Delaware corporation,<br><br>       Plaintiff,<br><br>              v.<br><br>GREGORY A. CHRISTIAN, et al.,<br><br>       Defendants. | Case No. CV-15-83-BU-BMM-JCL<br><br>**DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS** |

# TABLE OF CONTENTS

INTRODUCTION .......................................................................................1

BACKGROUND ........................................................................................3

LEGAL ARGUMENT ................................................................................6

    A.    This Court Lacks Subject Matter Jurisdiction; ARCO's
          Reliance on Federal Law Defenses in A State Court Action
          Does Not Create A Federal Cause of Action ......................................6

    B.    This Action Must Be Dismissed Because It Was Not Filed
          within The State of Limitations........................................................8

    C.    The Abstention Doctrine Requires Dismissal of This Acton
          Because The Identical Issue Is Currently Pending Before
          The State District Court ..................................................................10

          1.    ARCO Requests a Determination of State Law Issues
                 Presently Pending in Montana State Court .............................12

          2.    This Lawsuit Is Reactive to Long-Pending Montana
                 Litigation ..............................................................................14

          3.    This Lawsuit Is Duplicative of The Long-Pending
                 Montana Litigation ...............................................................15

          4.    The Additional Factors Identified by The Ninth Circuit
                 Also Indicate That Abstention Is Appropriate ........................16

    D.    This Action Must Be Dismissed Because The Landowners'
          Claims Are Not Barred by CERCLA, Therefore ARCO's
          Federal Complaint Fails to State A Claim upon Which
          Relief Can Be Granted ....................................................................18

          1.    Various Savings Provisions within CERCLA Preserve
                 The Landowners' Right to Bring A Claim for Restoration
                 Damages Pursuant to State Common Law .............................18

2.    Section 113(h) Precludes Polluter Challenges to
      Clean-Up Requirements to Avoid Delay; It Does
      Not Affect Common Law Claims for Property Damage.........20

3.    Plaintiffs' State Common Law Claim for Restoration
      Damage Does Not Constitute A "Challenge to A
      Remedial Action Selected" under § 113(h) of CERCLA........23

4.    The Landowners' Sought after Restoration Damages
      Will Not Conflict with CERCLA ...........................................25

CONCLUSION ................................................................................29

CERTIFICATE OF COMPLIANCE....................................................30

# TABLE OF AUTHORITIES

**Case Law:**

*accord Manor Care, Inc. v. Yaskin,*
  950 F.2d 122 (3d Cir. 1991) ................................................................ 14, 20

*ARCO Envtl. Remediation LLC v. Mont. DEQ,*
  213 F.3d 1108 (9th Cir. 2000) ........................................................ 7, 8, 23

*Bernice Samples v. Conoco, Inc.,*
  165 F. Supp. 2d 1303 (N.D. Fl. 2001) ......................................... 22, 23, 24

*Brillhart v. Excess Ins. Co.,*
  316 U.S. 491, 62 S. Ct. 1173 (1942) ........................................... 11, 12, 16

*Catellus Dev. Corp. v. L.D. McFarland Co.,*
  910 F. Supp. 1509 (D. Or. 1995) ................................................................ 9

*Choate v. Champion Home Builders Co.,*
  222 F.3d 788 (10th Cir. 2000) ........................................................... 25, 26

*Continental Casualty Co. v. Robsac Indus.,*
  947 F.2d 1367 (9th Cir. 1991) ........................................ 12, 13, 14, 15, 16

*Estate of Blue,*
  120 F.3d 982 (9th Cir. 1997) ..................................................................... 9

*Fireman's Fund Ins. v. City of Lodi,*
  302 F.3d 928 (9th Cir. 2002) ............................................................. 13, 20

*Fort Ord Toxics Project, Inc. v. California E.P.A.,*
  189 F.3d 828 (9th Cir. 1999) ................................................................... 21

*Franchise Tax Board v. Construction Laborers Vacation Trust,*
  463 U.S. 1 (1983) ...................................................................................... 20

*GEICO v. Dizol,*
  133 F.3d 1220 (9th Cir. 1998) ........................................................... 12, 14

*Govt. Employees Ins. Co. v. Dizol*,
   133 F. 3d 1220 (9th Cir. 1998)......................................................11, 16, 17

*Jablon v. Dean Witter*,
   614 F.2d 677 (9th Cir. 1980).........................................................9

*Levald, Inc. v. City of Palm Desert*,
   998 F.2d 680 (9th Cir. 1993).........................................................9

*Manor Care, Inc. v. Yaskin*,
   950 F.2d 122 (3d Cir. 1991).................................................24, 25

*Meghrig v. KFC Western, Inc.*,
   516 U.S. 479 (1996)....................................................................26

*New Mexico v. General Electric Co.*,
   467 F.3d 1223 (10th Cir. 2006)......................................13, 20, 26

*Pacesetter Sys., Inc. v. Medtronic, Inc.*,
   678 F.2d 93 (9th Cir. 1982)...................................................11, 12

*PMC, Inc. v. Sherwin-Williams Co.*,
   151 F.3d 610 (7th Cir. 1998)........................................................19

*Seven Arts Filmed Entertainment Ltd. v. Content Media Corp. PLC*,
   733 F.3d 1251 (9th Cir. 2013)............................................8, 9, 10

*Stanton Road Assn. v. Lohrey Enter.*,
   984 F.2d 1015 (9th Cir. 1993)......................................................24

*Sunburst Sch. Dist. No. 2 v. Texaco*,
   2007 MT 183, 338 Mont. 259, 165 P.3d 1079...................................4, 5, 28

*U.S. v. Bestfoods*,
   524 U.S. 51 (1998).....................................................................26

*U.S. v. Colorado,*
    990 F.2d 1565 (10th Cir. 1993) ..................................................... 13, 14, 20

*Wilton v. Seven Falls Co.,*
    15 U.S. 277, 115 S. Ct. 2137, 132 L. Ed. 2d 214 (1995) ..................... 10, 11

*Zuill v. Shanahan,*
    80 F.3d 1366 (9th Cir. 1996) ........................................................................ 9

## Other Authorities:

CERCLA § 113(h) ..................................................................................... passim

42 U.S.C. § 9607(j) ........................................................................................ 19

42 U.S.C. § 9613(h) ................................................................................. 21, 23

42 U.S.C. § 9614(a) ...................................................................................... 19

42 U.S.C. § 9614(b) ...................................................................................... 20

42 U.S.C. § 9652(d) ................................................................................. 18, 19

# EXHIBIT INDEX

Exh. 1       Complaint and Jury Demand 15 (Apr. 17, 2008)

Exh. 2       Pl.s' MIL re EPA Evidence (Oct. 9, 2013)

Exh. 3       ARCO's MSJ re CERCLA (May 17, 2013)

Exh. 4       ARCO's MSJ Br. re Statute of Limitations 16-28 (Sept. 12, 2013)

Exh. 5       Opinion, *Christian v. Atlantic Richfield Co.,* 2015 MT 255, ¶¶ 77-79, 380 Mont. 495, 358 P.3d 131 (Sept. 1, 2015)

Exh. 6       Scheduling Order (Jan. 7, 2016)

Exh. 7       Order, *Christian v. BP Amoco Corp.,* U.S. Dist. Ct., Mont. Dist., Butte Div., Case No. CV-08-45-BU-RFC (Dec. 9, 2008)

Exh. 8       Appellant's Br., *ARCO Envtl. Remediation LLC v. Mont. DEQ,* Case No. 99-36033, 18, 25, 27 (Nov. 2, 1999)

Exh. 9       ARCO's Answer to First Amended Complaint (affirmative defenses 11-13), *Christian v. BP Amoco Corp.,* U.S. Dist. Ct., Mont. Dist., Butte Div., Case No. CV-08-45-BU-RFC, 9 (July 31, 2008)

Exh. 10      Amended Complaint and Jury Demand (July 10, 2008)

Exh. 11      ARCO's Scheduling Conference Status Report 6 (Dec. 31, 2015)

Exh. 12      H.R. Rpt. 99-253(I) at 266 (Aug. 1, 1985)

Exh. 13      H.R. Conf. Rpt. 99-962 at 224 (Oct. 3, 1986)

Exh. 14      EPA PRP Search Manual (Sept. 2009)

Exh. 15      Aff. Bartelt, ¶¶ 19, 21, 23-26 (May 16, 2013)

# INTRODUCTION

ARCO's complaint alleges that that the Landowners' state law claim constitutes a prohibited "challenge" to the EPA's remedial action under CERCLA §113(h).[1] This Court should dismiss Atlantic Richfield Company ("ARCO")'s complaint for at least four reasons.

First, this Court lacks jurisdiction to issue an injunction interfering with the state court action, which has been pending for eight years. ARCO already attempted to remove the state court action to federal court. However, the federal court remanded the Landowners' underlying claim back to state court because the federal court did not have jurisdiction over the Landowners' state court case. Now, eight years later, ARCO files this action asking the federal court to enjoin the state court from allowing the Landowners' claims for restoration damages to proceed.

ARCO has asserted affirmative defenses in the state law case alleging that CERCLA bars the Landowners from obtaining restoration damages. ARCO has also filed a motion for summary judgment on the very issue pending before this Court. However, raising a federal law as a defense against a state court action (based on state common law) does not create federal jurisdiction. Therefore, this Court does not have jurisdiction to enjoin the state court from allowing the

---

[1] Before the State District Court and the Montana Supreme Court, ARCO also argued that restoration damages sought by the Landowners are an "inconsistent remedy" under §122(e)(6), however ARCO does not mention this spurious legal theory in its federal court complaint.

Landowners' claim for restoration damages from proceeding and, in essence, rule in ARCO's favor on the issue of whether CERCLA bars the Landowners' state law claim.

Second, even if ARCO could bring the present action, the three year statute of limitations has passed. ARCO has known since 2008 that the Landowners seek restoration damages. ARCO has alleged since 2008 that CERCLA bars the Landowners' state law claim for restoration damages.

Third, even if ARCO could bring this action and did so before the statute of limitations had expired, this Court should abstain from assuming jurisdiction because it is duplicative of an issue pending before the state district court. ARCO's present lawsuit is an inappropriate attempt to forum shop that could result in inconsistent results in the state and federal court systems.

Fourth, ARCO's complaint fails to state a claim for which relief could be granted because CERCLA clearly allows for common law claims such as trespass and nuisance lawsuits to proceed in the state courts, even where an EPA mandated cleanup pursuant to CERCLA is underway. CERCLA merely sets a floor, not a ceiling for environmental cleanup. Should the court or the jury in the state court action determine that ARCO did unlawfully trespass on the Landowners' properties by depositing hundreds of tons of arsenic and other toxic metals, the Landowners would be free to remove it using funds recovered from ARCO in the

state law case. The Landowners' removal of arsenic would not interfere with EPA's mandate because the goal of CERCLA is to facilitate the removal of toxic contaminants. Further, and most importantly, Congress specifically included savings provisions within CERCLA that allow for claims just like the Landowners' state law claim to proceed.

Because these numerous reasons exist for this Court to find that no jurisdiction exists for ARCO's federal law suit, the Defendant Landowners request that this Court dismiss ARCO's complaint.

## BACKGROUND

The properties upon which the Landowners have built their homes, planted their gardens, raised their children, and resided for years—in some cases, generations—is contaminated with arsenic, lead and other toxic pollutants. These contaminants are ultra-hazardous and remain on the Landowners' properties in large amounts. The soil on some of the Landowners' homes has been found to contain concentrations of arsenic that is 100 times higher than the amount that would exist in the soil naturally.

The contamination was placed on the Landowners' property by the operations of the Anaconda Company (which is ARCO's predecessor). ARCO's pollution of the Landowners' properties was tortious and in violation of Montana

common law, including the law of strict liability, trespass, nuisance, and negligence.

On April 17, 2008, the Opportunity Citizens filed an action against ARCO in state district court seeking compensation for the damage to their properties caused by ARCO's former industrial activities and resulting pollution. The state district court action seeks restoration damages because, as recognized by the Montana Supreme Court:

> If a plaintiff wants to use the damaged property, instead of selling it, restoration of the property constitutes the only remedy that affords a plaintiff full compensation.

*Sunburst Sch. Dist. No. 2 v. Texaco*, 2007 MT 183, ¶ 34, 338 Mont. 259, 165 P.3d 1079 (citing *Roman Catholic Church v. Louisiana Gas*, 618 So.2d 874, 877 (La. 1993)).

In addition to restoration damages, the Landowners also seek damages for their:

A.    Injury to and loss of use and enjoyment of real and personal property;

B.    Loss of the value of real property and rights incidental thereto, and loss of use of that value and those rights;

C.    Incidental and consequential damages, including relocation expenses and loss of rental income and/or value;

D.     Annoyance, inconvenience and discomfort over the loss and
       prospective loss of property value, economic opportunities, ways of
       life and other legal rights;

E.     Wrongful occupation; and

F.     Expenses for and cost of investigation.

Exh. 1, Complaint and Jury Demand[2] 15 (Apr. 17, 2008).

In the state district court action, the Landowners filed motions in limine
excluding any evidence of the EPA's assessment of the risk to human health and
the EPA's chosen remedies. Exh. 2, Pl.s' MIL re EPA Evidence (Oct. 9, 2013).
The Landowners moved to exclude these matters because they are irrelevant to the
Landowners' common law strict liability, nuisance, trespass, and negligence
claims. *Sunburst*, ¶ 83.

On May 17, 2013, ARCO filed a motion for summary judgment in which
ARCO alleged that CERCLA bars the Landowners' claim for restoration damages.
Exh. 3, ARCO's MSJ re CERCLA (May 17, 2013). In support of a separate motion
for summary judgment filed in the state district court, ARCO also argued that the
statute of limitations had run on the Landowners' claim because the pollution at

---

[2] All pleading exhibits herein pertain to *Christian v. Atlantic Richfield Co.,* Montana Second
Judicial Dist. Ct., Silver Bow Co., Case No. DV-08-173, unless otherwise referenced.

issue was not "reasonably abatable." Exh. 4, ARCO's MSJ Br. re Statute of Limitations 16-28 (Sept. 12, 2013).

In ARCO's motion for summary judgment premised on the statute of limitations, ARCO argued that the pollution was not "reasonably abatable" because CERCLA prevents the Landowners from restoring their properties. *Id*. at 20-28. Therefore, argued ARCO, the continuing tort doctrine failed to toll the Landowners' claim as the pollution was not "reasonably abatable." *Id*. at 16-28.

While ARCO prevailed at the state district court with this argument, the Montana Supreme Court reversed and determined that questions of fact exist regarding whether the pollution is "reasonably abatable." Exh. 5, Opinion, *Christian v. Atlantic Richfield Co.,* 2015 MT 255, ¶¶ 77-79, 380 Mont. 495, 358 P.3d 131 (Sept. 1, 2015). Trial is set for November 1, 2016 – December 2, 2016. Exh. 6, Scheduling Order (Jan. 7, 2016).

## LEGAL ARGUMENT

**A.    This Court Lacks Subject Matter Jurisdiction; ARCO's Reliance on Federal Law Defenses in A State Court Action Does Not Create A Federal Cause of Action.**

ARCO previously removed the Landowners' state law claim to federal court. In December of 2008, Judge Cebull determined that the federal court did not have jurisdiction over the Landowners' claims against ARCO. Exh. 7, Order, *Christian*

*v. BP Amoco Corp.,* U.S. Dist. Ct., Mont. Dist., Butte Div., Case No. CV-08-45-BU-RFC (Dec. 9, 2008).

ARCO now seeks a second bite at the apple. ARCO contends that by virtue of its argument that CERCLA bars the Landowners' claim for restoration damages in the state law action, federal jurisdiction for this new cause of action exists. ARCO argues as much even though the sole intent of this new federal action is to interfere with and enjoin the state cause of action over which the federal court has already determined it has no jurisdiction.

Not only is ARCO wrong, but it has argued (successfully) to the contrary in the past. In *ARCO Envtl. Remediation LLC*, ARCO successfully resisted the MDEQ's efforts to remove ARCO's claim to federal court. *ARCO Envtl. Remediation LLC v. Mont. DEQ*, 213 F.3d 1108, 1114 (9th Cir. 2000). In that case, ARCO argued, correctly, that if a plaintiff's claim is based upon state law, a defendant cannot create federal jurisdiction by raising a federal law, such as CERCLA, as a defense. Exh. 8, Appellant's Br., *ARCO Envtl. Remediation LLC v. Mont. DEQ,* Case No. 99-36033, 27 (Nov. 2, 1999). Therefore, as held by the Ninth Circuit, a conflict between federal and state law may constitute preemption – but it does not create federal jurisdiction:

> [P]reemption that stems from a conflict between federal and state law is a defense to a state law cause of action and, therefore, does not confer federal jurisdiction over the case.

*ARCO Envtl. Rem., LLC*, 213 F.3d at 1114.

In this case, ARCO is attempting to do what it prevented MDEQ from doing in *ARCO Envtl. Rem., LLC*. Here, ARCO is attempting to create federal jurisdiction by asserting that CERCLA bars recovery against it in the Landowners' state law claim. ARCO has already raised CERCLA as a defense against the Landowners' pending state law claim. Exh. 9, ARCO's Answer to Amended Complaint, *Christian v. BP Amoco Corp.,* U.S. Dist. Ct., Mont. Dist., Butte Div., Case No. CV-08-45-BU-RFC, 9 (affirmative defenses 11-13) (July 31, 2008). This purported defense against the Landowners' claim does not create federal jurisdiction.

ARCO has already lost the issue of federal jurisdiction over the Landowners' state law claims. This new action, which asks the federal court to interfere with the pending state law claims, should be dismissed. The federal courts simply do not have jurisdiction over the Landowners' state law claims against ARCO regardless of how many times ARCO tries to allege it.

**B.      This Action Must Be Dismissed Because It Was Not Filed within The Statute of Limitations.**

A plaintiff fails to state a claim, and therefore dismissal is appropriate, where his failure to comply with the applicable statute of limitations is evident from the allegations of the complaint. *Seven Arts Filmed Entertainment Ltd. v.*

*Content Media Corp. PLC,* 733 F.3d 1251, 1254 (9th Cir. 2013) (affirming dismissal on statute of limitations grounds); *Estate of Blue,* 120 F.3d 982, 984 (9th Cir. 1997) (same); *Jablon v. Dean Witter,* 614 F.2d 677, 682 (9th Cir. 1980) (same).

Declaratory judgment actions, are "subject to a statute of limitations generally applicable to civil claims." *Zuill v. Shanahan,* 80 F.3d 1366, 1369-70 (9th Cir. 1996), *as amended* (June 14, 1996). However, if "a claim for declaratory relief could have been resolved through another form of action which has a specific limitations period, the specific period of time will govern." *Levald, Inc. v. City of Palm Desert,* 998 F.2d 680, 688–89 (9th Cir. 1993).

ARCO contends that CERCLA's § 113(h) provides the operative authority to bar the Landowners' claim for restoration damages. Actions brought pursuant to CERCLA § 113 are governed by a three-year statute of limitations. *Catellus Dev. Corp. v. L.D. McFarland Co.*, 910 F. Supp. 1509, 1514 (D. Or. 1995). Therefore, a three year statute of limitations applies to ARCO's current declaratory judgment action, brought pursuant to § 113(h).

The Landowners served ARCO with their complaint asserting state law claims on July 10, 2008. Exh. 10, Amended Complaint and Jury Demand (July 10, 2008). In their complaint, the Landowners sought:

> Damages for investigation and restoration of Plaintiffs' property and
> other contaminated property in close proximity to Plaintiffs' property
> in order to remove present contamination and future contamination.

*Id.* at 17.

Clearly ARCO was on notice that the Landowners sought restoration damages. In fact, and very importantly, in its Answer, filed on July 31, 2008, ARCO asserted three affirmative defenses contending Plaintiffs' claims are "barred" by CERCLA and "preempted" by federal law. *See* Exh. 9, Answer 9 (affirmative defenses 11-13).

Nevertheless, ARCO did not file the present declaratory judgment action until December 22, 2015. Clearly, the statute of limitations has run and ARCO's complaint must be dismissed. *Seven Arts,* 733 F.3d at 1254.

**C.     The Abstention Doctrine Requires Dismissal of This Action Because The Identical Issue Is Currently Pending Before The State District Court.**

The Declaratory Judgment Act ("DJA") permits, but does not require, federal courts to issue declaratory judgments. The Supreme Court has explained that the DJA's "textual commitment to discretion, and the breadth of leeway we have always understood it to suggest, distinguish the declaratory judgment context from other areas of the law in which concepts of discretion surface." *Wilton v. Seven Falls Co.,* 515 U.S. 277, 287, 115 S. Ct. 2137, 132 L. Ed. 2d 214 (1995).

The U.S. Supreme Court explains that federal courts may exercise their discretion not to exercise jurisdiction in favor of "parallel state litigation." 515 U.S. at 281 (*Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 62 S. Ct. 1173, 86 L. Ed. 1620 (1942)). The Court in *Brillhart* suggested a consideration of three primary factors. As interpreted by the Ninth Circuit, these factors include: (1) whether the state law issues presented by the federal case are the subject of a parallel proceeding in state court; (2) the interest in avoiding the use of federal declaratory judgment actions to forum shop; and (3) the policy of avoiding duplicative litigation.

In addition, the Ninth Circuit has noted that other considerations include:

> Whether the declaratory action will settle all aspects of the controversy; whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue; whether the declaratory action is being sought merely for the purposes of procedural fencing or to obtain a res judicata advantage; or whether the use of a declaratory action will result in entanglement between the federal and state court systems. In addition, the district court might also consider the convenience of the parties, and the availability and relative convenience of other remedies.

*Govt. Employees Ins. Co. v. Dizol*, 133 F. 3d 1220, 1225 n.5 (9th Cir. 1998).

"Normally, sound judicial administration would indicate that when two identical actions are filed in courts of concurrent jurisdiction, the court which first acquired jurisdiction should try the lawsuit and no purpose would be served by proceeding with a second action." *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d

93, 95 (9th Cir. 1982); *Continental Casualty Co. v. Robsac Indus.*, 947 F.2d 1367, 1374 (9th Cir. 1991)[3].

The Ninth Circuit's decision in *Robsac*, based on the factors outlined long ago in the Supreme Court's 1942 decision *in Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 62 S. Ct. 1173 (1942), and as further explained by *GEICO v. Dizol,* 133 F.3d 1220 (9th Cir. 1998), compels the conclusion that the Federal Court action must be dismissed because: 1) the issue regarding whether CERCLA preempts or bars the Landowners' claim for restoration damages is already pending in the Landowners' state law action; 2) the filing of the Federal action evidences impermissible forum shopping by ARCO; 3) the Federal action is duplicative of the earlier filed Montana litigation; and 4) dismissing the Federal action would avoid piecemeal litigation. *Dizol*, 133 F. 3d at 1371.

## 1.    ARCO Requests a Determination of State Law Issues Presently Pending in Montana State Court.

Where a state court action is pending and presents the same issue as is presented in a federal declaratory suit, "there exists a presumption that the entire suit should be heard in state court." *Robsac*, 947 F.2d at 1374.

In this case, ARCO seeks a declaration on an issue that is currently pending in cross-motions for summary judgment before the state district

---

[3] *Rev'd on other grounds* in *Govt. Empl. Ins. Co. v. Dizol*, 133 F.3d 1220 (9th Cir. 1998).

court. Should this Court allow ARCO's Federal case to proceed, it is conceivable that the state district court and this Court could reach disparate conclusions regarding whether CERCLA bars the Landowners' claim for restoration damages. This is exactly the situation that the Ninth Circuit discourages in *Robsac*.

As argued by ARCO itself:

> Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined.

Exh. 8, Appellant's Br. 18 (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100,108-09 (1941)).

CERCLA does not occupy the fields of property law or environmental cleanup. *New Mexico v. General Electric Co.,* 467 F.3d 1223, 1244 (10th Cir. 2006) ("Given these saving clauses, as well as the spirit of cooperative federalism running throughout CERCLA and its regulations, we may safely say Congress did not intend CERCLA to completely preempt state laws related to hazardous waste contamination."); *Fireman's Fund Ins. v. City of Lodi,* 302 F.3d 928, 941-43 (9th Cir. 2002) ("Congress clearly expressed its intent that CERCLA should work in conjunction with other federal and state hazardous waste laws in order to solve this country's hazardous waste cleanup problem."); *U.S. v. Colorado,* 990 F.2d 1565, 1575 (10th Cir.

1993); *accord Manor Care, Inc. v. Yaskin,* 950 F.2d 122, 125-26 (3d Cir. 1991) (Alito, J.).

Therefore, abstention is proper and this Court should avoid exerting jurisdiction over this issue that has been pending in the state district court for so long.

## 2. This Lawsuit Is Reactive to Long-Pending Montana Litigation.

To discourage forum shopping, federal district courts should abstain from hearing a declaratory judgment action that is "reactive" to an identical state court suit. In *Dizol*, the Ninth Circuit held:

> . . . [the] second *Brillhart* factor-the interest in avoiding the use by litigants of declaratory judgment actions as a means of forum shopping. We have also described this factor as relating to "the 'defensive' or 'reactive' nature of a federal declaratory judgment suit," and stated that if a declaratory judgment suit is defensive or reactive, that would justify a court's decision not to exercise jurisdiction.

133 F. 3d at 1371.

Further, *Robsac* is right on point:

> [P]ermitting [this case] to go forward when there is a pending state court case presenting the identical issue would encourage forum shopping in violation of the second *Brillhart* principle.

*Robsac*, 947 F.2d at 1374.

In this case, for reasons only known to ARCO, after the assumption of jurisdiction by Hon. Katherine M. Bidegaray, ARCO chose to file this

federal action seeking identical relief to its motion for summary judgment regarding CERCLA pending in the state district court. Pursuant to the direction from the Ninth Circuit, this Court should abstain from assuming jurisdiction in order to avoid encouraging such obvious attempts at forum shopping.

### 3. This Lawsuit Is Duplicative of The Long-Pending Montana Litigation.

The final *Brillhart* factor supports abstention because the Ninth Circuit and the U.S. Supreme Court discourage duplicative litigation as a waste of judicial resources.

As stated in *Robsac*:

> The third *Brillhart* factor is the policy of avoidance of duplicative litigation. Here it is clear that the policy would be frustrated by permitting the federal action to go forward during the pendency of the state court action because the federal declaratory suit is virtually the mirror image of the state suit. All of the issues presented by the declaratory judgment action could be resolved by the state court. Hence, permitting the present action to go forward would waste judicial resources in violation of the third *Brillhart* factor.

*Robsac*, 947 F.2d at 1374.

Again, in this case the declaratory relief ARCO seeks is identical to the relief sought in the state district court in its motion for summary judgment regarding CERCLA. As shown below in Section D of this brief, the CERCLA savings provisions, as well as the legislative history and

judicial interpretation of CERCLA, clearly preserve the right of the

Landowners to bring their common law claims seeking restoration damages.

Therefore, should this Court exert jurisdiction, the most likely result would

be that both this Court and the state district court reach identical conclusions

– that CERCLA does not preempt the Landowners' common law claims.

Clearly, this would be a waste of judicial resources in contravention of the

clear policy set forth in *Brillhart* and *Robsac*.

**4.      The Additional Factors Identified by The Ninth Circuit Also Indicate That Abstention Is Appropriate.**

As noted above, the Ninth Circuit has identified several additional factors

that may indicate whether abstention is appropriate. These factors include:

a.      whether the declaratory action will settle all aspects of the controversy;

b.      whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue;

c.      whether the declaratory action is being sought merely for the purposes of procedural fencing or to obtain a res judicata advantage; **or**

d.      whether the use of a declaratory action will result in entanglement between the federal and state court systems.

*Govt. Employees Ins. Co. v. Dizol*, 133 F. 3d 1220, 1225 n.5 (9th Cir. 1998).

In addition, the district court might also consider the convenience of
the parties, and the availability and relative convenience of other remedies.
*Id.*

Each of these additional factors support abstention.

First, even if ARCO prevailed it would not bar the Landowners from seeking
damages other than their claim for restoration damages in the pending state court
action.

Second, even if ARCO prevailed in this case at the federal district court
level and at the Ninth Circuit, without ultimate resolution by the U.S. Supreme
Court nothing prevents the state court from allowing the Landowners from
pursuing their state law claims for restoration damages. Therefore, this declaratory
judgment action is very unlikely to serve a useful purpose in clarifying or resolving
issues of consequence between ARCO and the Landowners.

Third, ARCO clearly intends to seek a *res judicata* advantage in this federal
case as it has requested that the state district court delay ruling on the Landowners'
cross-motion for summary judgment on the non-applicability of CERCLA. Exh.
11, ARCO's Scheduling Conference Status Report 6 (Dec. 31, 2015).

Fourth, ARCO is seeking to entangle the federal court with the state court as
it has sought an injunction to be issues by the federal court of a claim for damages
brought in state court.

Finally, another more convenient and completely equitable remedy exists for ARCO. In the absence of this federal declaratory judgment action ARCO could simply live with adjudication of its own motion for summary judgment filed in the state district court three (3) years ago. Dismissing this case would clearly avoid piecemeal litigation, encourage judicial efficiency and would not prejudice ARCO.

**D.      This Action Must Be Dismissed Because The Landowners' Claims Are Not Barred By CERCLA, Therefore ARCO's Federal Complaint Fails to State A Claim upon Which Relief Can Be Granted.**

ARCO's complaint seeks a declaration that CERCLA bars the Landowners' pending state court action for restoration damages. ARCO's complaint must be dismissed because, as shown below, CERCLA does not bar the Landowners' claim for restoration damages that is premised solely upon Montana's common law.

**1.      Various Savings Provisions within CERCLA Preserve The Landowners' Right to Bring A Claim for Restoration Damages Pursuant to State Common Law.**

Congress took every precaution to ensure that state common law claims, such as those filed by the Landowners in Montana state district court in 2008, would not be affected in any way by CERCLA. CERCLA contains three separate savings provisions preserving the right to impose additional liability for the release of a hazardous substance, one of which provides:

> **Nothing in this chapter shall affect or modify in any way the obligations or liabilities of any person under other Federal or State law, including common law**, with respect to releases of

hazardous substances or other pollutants or contaminants. The
provisions of this chapter shall not be considered, interpreted, or
construed in any way as reflecting a determination, in part or whole,
of policy regarding the inapplicability of strict liability, or strict
liability doctrines, to activities relating to hazardous substances,
pollutants, or contaminants or other such activities.

42 U.S.C. § 9652(d) (emphasis added).

The principle purpose of this CERCLA savings provision "is to preserve to

victims of toxic waste the other remedies they may have under federal or state

law." *PMC, Inc. v. Sherwin-Williams Co.*, 151 F.3d 610, 617 (7th Cir. 1998)

(citing *Beck v. Atlantic Richfield Co.*, 62 F.3d 1240, 1243 n. 8 (9th Cir. 1995)).

Additionally, CERCLA contains a "relationship to other laws" provision, §

114(a), which provides:

[n]othing in this chapter shall be construed or interpreted as
preempting any State from imposing any additional liability or
requirements with respect to the release of hazardous substances
within such State.

42 U.S.C. § 9614(a). Finally, another savings provision in CERCLA expressly

provides:

**[n]othing in this paragraph shall affect or modify in any way the
obligations or liability of any person under any other provision of
State or Federal law, including common law, for damages, injury,
or loss resulting from a release of any hazardous substance** or for
removal or remedial action or the costs of removal or remedial action
of such hazardous substance.

42 U.S.C. § 9607(j) (emphasis added).

It is well-established that the inclusion of these savings provisions in CERCLA makes it clear that Congress did not intend to preempt state causes of action. *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 25 (1983). Various courts have found that Congress did not preempt state law claims similar to the claims that the Landowners brought in 2008 against ARCO. *See e.g. New Mexico v. General Electric Co.*, 467 F.3d 1223, 1244 (10th Cir. 2006); *Fireman's Fund Ins. v. City of Lodi*, 302 F.3d 928, 941-43 (9th Cir. 2002); *U.S. v. Colorado*, 990 F.2d 1565, 1575 (10th Cir. 1993); *accord Manor Care, Inc. v. Yaskin*, 950 F.2d 122, 125-26 (3d Cir. 1991).

Importantly, Congress even contemplated the situation where a private party receives funds from a polluter for restoration damages on a site regulated by CERCLA, and precludes that private individual from double recovery of the same costs through a CERCLA action. *See* 42 U.S.C. § 9614(b).

2.  **Section 113(h) Precludes Polluter Challenges to Clean-Up Requirements To Avoid Delay; It Does Not Affect Common Law Claims for Property Damage.**

ARCO's complaint relies specifically upon CERCLA § 113(h) to argue CERCLA bars Plaintiffs' claim for restoration damages. ARCO's interpretation of § 113(h) is in error and runs contrary to the clear legislative intent. Congress did not enact § 113(h) to serve as a shield against litigation that is unrelated to

CERCLA enforcement. *Fort Ord Toxics Project, Inc. v. California E.P.A.*, 189 F.3d 828, 831 (9th Cir. 1999).

In 1986, Congress passed CERCLA, § 113(h) to prevent polluters from using the courts to stall EPA cleanup efforts at Superfund sites. Section 113(h) deprives federal courts of jurisdiction to hear polluters' "challenges" to EPA removal or remedial actions:

> No federal court shall have jurisdiction under Federal law other than under section 1332 of Title 28 (relating to diversity of citizenship jurisdiction) or under State law which is applicable or relevant and appropriate under section 9621 of this title (relating to cleanup standards) to review any challenges to removal or remedial action selected under section 9606(a) of this title[.][4]

42 U.S.C. § 9613(h). Congress' expressed purpose in enacting § 133(h) was to prevent polluting parties who are financially responsible for clean-up from filing "dilatory, interim lawsuits which have the effect of slowing down or preventing the EPA's cleanup activities." Exh. 12, H.R. Rpt. 99-253(I) at 266 (Aug. 1, 1985).

The Congressional Committee of Conference that drafted the 1986 amendments to CERCLA explained that the "[n]ew section 113(h) is not intended to affect <u>in any way</u> the rights of persons to bring nuisance actions under State law with respect to releases or threatened releases of hazardous substances, pollutants, or contaminants." Exh. 13, H.R. Conf. Rpt. 99-962 at 224 (Oct. 3, 1986) (emphasis

---

[4] Exceptions 1-5 to § 113(h) are inapplicable.

added). The Senate agreed to this Committee of Conference Report. *Bernice*

*Samples v. Conoco, Inc.,* 165 F. Supp. 2d 1303, 1312 (N.D. Florida, 2001) (citing

132 CONG. REC. 28, 406, 28, 456 (1986)). Senator Stafford "who insisted upon

stating expressly what all had agreed was their intent," provided additional

explanation of the "purpose and meaning" of the provisions in § 113:

> The time of review of judicial challenges to cleanups is governed by
> 113(h) for those suits to which it is applicable. It is not by any means
> applicable to all suits. For purposes of those based on State law, for
> example, 113(h) governs only those brought under State law which is
> applicable or relevant and appropriate as defined under Section 121.[5]
> <u>In no case is State nuisance law, whether public or private nuisance,
> affected by 113(h).</u>

*Bernice Samples* at 1312 (citing 132 CONG. REC. 28, 410) (emphasis added).

Senator Mitchell echoed Senator Stafford, explaining that "[s]tate nuisance suits

would, of course, be permitted at any time." *Bernice Samples* at *Id.* at 1312 (citing

132 CONG. REC. at 28, 429).

ARCO's briefing in other cases similarly argues that CERCLA rarely

preempts state law remedies:

> Federal and state courts have been faced with CERCLA preemption
> arguments in a wide variety of circumstances. While conflict
> preemption has been found in some situations, every decision of
> which [ARCO] is aware in which the issue was raised, agrees that
> given its broadly inclusive *non*-preemptive language, CERCLA is not
> a "completely preemptive" statute.

---

[5] This sentence applies to enforcement actions that require state government standards be
incorporated and enforced by the EPA in the CERCLA clean-up and is not applicable here.

Exh. 8, Appellant's Br. 25.

> **3. Plaintiffs' State Common Law Claim for Restoration Damage Does Not Constitute A "Challenge to A Remedial Action Selected" under § 113(h) of CERCLA.**

In order to invoke § 113(h) to block the Landowners' state law claim for restoration damages, ARCO would have to demonstrate that the Landowners asserted a "challenge" to EPA's "remedial action selected." As shown below, ARCO cannot satisfy this requirement.

In order to preserve state law claims and damages, Congress was careful to circumscribe the effect of § 113(h). The jurisdictional provisions of 113(h) operate to bar only "challenges to removal or remedial action selected[.]" 42 U.S.C. § 9613(h). Challenges are narrowly construed in the context of § 113(h). Claims are interpreted as a "challenge" pursuant to § 113(h) only if the relief sought alters the ROD or terminates or delays the EPA-mandated cleanup. *ARCO Envtl. Remediation LLC v. Mont. DEQ*, 213 F.3d 1108, 1115 (9th Cir. 2000).

In *Bernice Samples v. Conoco, Inc,* a group of landowners brought state law trespass, nuisance, and strict liability claims against corporate defendants for polluting the groundwater with hazardous chemicals. 165 F. Supp. 2d 1303. The EPA was simultaneously working to remediate the site. Under each count, plaintiffs sought to recover damages including restoration costs. Like ARCO here, the defendants in *Bernice Samples* argued that plaintiffs' claims constituted a

challenge to EPA's cleanup. After conducting a comprehensive analysis of the

meaning and history of § 113(h), the *Bernice Samples* court explained:

> Plaintiffs' lawsuit does not constitute a "challenge" to the consent
> decree as that term is used in section 113(h) of CERCLA, 42 U.S.C. §
> 9613(h). The lawsuit is not an action designed to review or contest the
> remedy selected by the EPA, prior to implementation; it is not an
> action designed to obtain a court order directing the EPA to select a
> different remedy; it is not an action designed to delay, enjoin, or
> prevent the implementation of a remedy selected by the EPA; and it is
> not a citizen suit brought pursuant to 42 U.S.C. § 9659.

*Id*. at 1315.

This holding is consistent with *Stanton Road Assn. v. Lohrey Enter.*, 984

F.2d 1015 (9th Cir. 1993). In *Stanton Road*, the district court awarded remediation

damages in a chlorinated solvents pollution case brought pursuant to both

CERCLA and California state tort law. *Id.* at 1021. The Ninth Circuit disallowed

the restoration damages under CERCLA, finding that such damages are

recoverable only after a plaintiff has already incurred such costs in cleaning up his

property. *Id.* (CERCLA § 107 precludes awards of future response costs).

However, the court found that the plaintiff was not prohibited from recovering

future costs or repair damages under his state law trespass, negligence and

nuisance claims. *Id.* at 1022.

In *Manor Care, Inc. v. Yaskin*, 950 F.2d 122, 126 (3d Cir. 1991), the court

held that directives under New Jersey state law supplemented, rather than

conflicted, with a CERCLA action. The court further held:

> Manor Care's argument is inconsistent with Congress' clear and strong intent. As discussed above, Congress did not intend for CERCLA remedies to preempt complementary state remedies…
>
> [I]f CERCLA's remedies preempted state remedies for recovering costs of hazardous waste cleanups, § 114(b) (which prevents double recovery) would make no sense at all. Accordingly, we find no actual conflict between the DEP directives at issue in this case and the CERCLA provisions on which Manor Care relies.

*Id.* at 127.

Like the above cases, Plaintiffs' state law claims here do not present a "challenge" to any potential EPA cleanup at the Superfund site. Indeed, CERCLA is irrelevant to Plaintiffs' common law claims. Plaintiffs do not seek to dictate specific remedial actions that the EPA must undertake. As shown below, the Landowners' claims for monetary restoration damages do not conflict with EPA's remediation in any way.

### 4. The Landowners' Sought After Restoration Damages Will Not Conflict with CERCLA.

Actual conflict between state and federal law occurs "where it is impossible for a private party to comply with both state and federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Choate v. Champion Home Builders Co.,* 222 F.3d 788, 792 (10th Cir. 2000). For a federal law to prevent a common law remedy, the common law remedy must be a "material impediment to the federal

action, or thwart [ ] the federal policy in a material way." *Id.* at 796 (quoting *Mount Olivet Cemetery Assoc. v. Salt Lake City,* 164 F.3d 480, 489 (10th Cir. 1998)).

CERCLA was enacted in 1980 to ensure the cleanup of contaminated sites and "eliminate threats to human health and the environment posed by uncontrolled hazardous waste sites." Exh. 14, EPA PRP Search Manual (Sept. 2009). CERCLA is best known as setting forth a mechanism to clean up hazardous waste sites under a remediation-based approach. *U.S. v. Bestfoods*, 524 U.S. 51, 55 (1998). CERCLA's principle aims are to effectuate the cleanup of hazardous waste sites and impose cleanup costs on responsible parties. *Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 483 (1996).

"CERCLA sets a floor, not a ceiling" for environmental remediation. *New Mexico*, 467 F.3d at 1246. "CERCLA's saving clauses (as well as other CERCLA provisions) undoubtedly preserve a quantum of state legislative and common law actions and remedies related to the release and cleanup of hazardous waste." *Id.*

In this case, restoration damages do not stand as an obstacle to Congress' objectives in passing CERCLA. The EPA has required ARCO to remove soil containing more than 250 ppm arsenic from all residential property.[6] ARCO Complaint, ¶ 46. Plaintiffs' common law property damage claims do not make it

_____

[6] The 250 ppm standard urged by ARCO to the EPA exceeds most if not all states arsenic health-based standards for soil contamination. Indeed, the Montana Department of Environmental Quality and State regulation do not allow arsenic contamination above 30 ppm.

"impossible" for ARCO to comply with the EPA's requirement. Nor have the Landowners' common law claims impeded the CERCLA framework or EPA's requirements on site.

For example, to the extent residents of Opportunity and Crackerville requested testing of soil on their properties, the testing was performed, and the remediation required by EPA under CERCLA has already been conducted by ARCO. Exh. 15, Aff. Bartelt, ¶ 19 (May 16, 2013). As a result of the filing of the Landowners' lawsuit in state district court, ARCO conducted additional sampling on every state court plaintiffs' property, and now acknowledges contamination exceeding the regulatory level for arsenic in soil remains on some of the Landowners' properties. ARCO proposed remediation on those properties. *Id.,* ¶ 21. The Landowners have not opposed ARCO's proposed remediation and have cooperated fully with ARCO by executing access agreements.

With respect to groundwater, ARCO has sampled a number of residential wells, and has replaced two on property owned by Plaintiffs in this case. *Id*., ¶¶ 23-26. With respect to the remainder of the Landowners' properties, ARCO has not performed or proposed any further cleanup. The Landowners recovery of restoration damages from ARCO in the state district court action, as authorized by

Montana common law, would have no impact whatsoever on any of ARCO's work pursuant to CERCLA.[7]

The Landowners have cooperated, and will cooperate further, with the cleanup required of ARCO by EPA. Montana law, however, affords the Landowners a right to seek restoration damages. The Landowners' use of damages awarded to them following the completion of the state law claim to perform additional cleanup never contemplated by ARCO nor required by EPA would not conflict with the letter, nor the spirit, of CERCLA.

Congress' intent could not be clearer or more contrary to the relief ARCO seeks through this declaratory relief action. Section 113(h) simply does not affect common law actions for restoration damages. ARCO's belabored interpretation of the text must not convince this Court to enforce a result Congress specifically meant to avoid. Simply put, ARCO can allege no set of facts demonstrating that the Landowners' common law claims are barred by CERCLA.

---

[7] It is well-established that under Montana law, property owners can recover restoration damages for cleanup exceeding standards established by regulatory agencies:

> Thus, we agree with Sunburst that CECRA's focus on cost effectiveness and limits on health-based standards differ from the factors to be considered in assessing damages under the common law. Nothing in CECRA preempts a common law claim that seeks to recover restoration damages to remediate contamination beyond the statute's health-based standards.

*Sunburst*, ¶ 59 (emphasis added).

## CONCLUSION

This Court lacks jurisdiction over the subject matter. Even if there were jurisdiction, the Court should abstain from assuming such because long standing state claims are pending. Because the complaint on its face asserts claims beyond the statute of limitations, the Court should summarily dismiss the case. Finally, this complaint fails to state a claim for relief given the clear mandates from Congress allowing state law common law claims to proceed in the face of any CERCLA cleanup.

Wherefore, Defendants respectfully request this Court to issue an order dismissing ARCO's complaint and award fees and costs.

DATED, this 4th day of February 2016.


/s/ Justin P. Stalpes
BECK & AMSDEN, pllc

*Attorneys for Defendants*

## CERTIFICATE OF COMPLIANCE

This brief complies with L.R. 7.1. There are 6,475 words in this brief, excluding the caption, table of contents, table of authorities, exhibit index and certificate of compliance.


DATED, this 4th day of February 2016.


/s/ Justin P. Stalpes
BECK & AMSDEN, pllc

*Attorneys for Defendants*