# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# BUTTE DIVISION

| | |
|---|---|
| ATLANTIC RICHFIELD COMPANY,<br><br>               Plaintiff,<br>vs.<br><br>GREGORY A. CHRISTIAN, et al.,<br><br>               Defendants. | CV 15-83-BU-BMM<br><br>**ORDER** |

## INTRODUCTION

Plaintiff Atlantic Richfield Company (ARCO) filed this action for declaratory and injunctive relief on December 22, 2015. ARCO seeks a determination that an environmental restoration plan proposed by the Defendant landowners (Landowners) in a pending state court action is prohibited by Section 113(h) of the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. § 9613(h). Presently before the Court are the Landowners' motion to dismiss ARCO's complaint, and the parties' cross-motions for summary judgment.

United States Magistrate Judge Jeremiah C. Lynch issued Findings and Recommendations in this matter on July 8, 2016. (Doc. 49). Judge Lynch

recommended that the Landowners' motion to dismiss be granted, and that all other pending motions be denied as moot. (Doc. 49 at 16).

ARCO filed objections to Judge Lynch's Findings and Recommendations on July 20, 2016. (Doc. 51). The Landowners filed a response to ARCO's objections on August 3, 2016.

## **STANDARD OF REVIEW**

The Court reviews de novo findings and recommendations to which objections are made. 28 U.S.C. § 636(b)(1). No review is required of proposed findings and recommendations to which no objection is made. *Thomas v. Arn*, 474 U.S. 140, 149-152 (1986).

## **BACKGROUND**

For decades ARCO and its predecessors processed copper ore at the Anaconda Smelter located near Anaconda, Montana. The smelter's stack emmitted arsenic and lead during the smelting process. The arsenic and lead emissions settled on the surrounding landscape. The Anaconda Smelter closed in 1980. The area surrounding the Anaconda Smelter was declared a CERCLA Superfund site in 1983.

The Landowners own property near the former Anaconda Smelter in Opportunity and Crackerville, Montana. The Landowners' properties are located

within the exterior boundaries of the Anaconda Smelter Superfund Site. The Anaconda Smelter Superfund Site has been the subject of a lengthy environmental cleanup effort directed by the United States Environmental Protection Agency (EPA).

The EPA has divided the Anaconda Smelter Superfund Site into five major sections called operable units. Each operable unit relates to a different medium or geographical area for cleanup. Each operable unit has its own record of decision setting forth the EPA's chosen cleanup remedy for that operable unit. Two of the operable units and their records of decision directly affect property owned by the Landowners. The Community Soils Operable Unit encompasses the cleanup of the Landowners' residential yards. The Anaconda Regional, Water, Waste, and Soils Operable Unit encompasses the cleanup of the Landowners' domestic wells and pasture properties.

ARCO, under the EPA's direction, has been responsible for implementing the cleanup efforts within the Anaconda Smelter Superfund Site. ARCO has sampled soil for arsenic in approximately 1,740 residential yards within the Anaconda Smelter Superfund Site. ARCO has found arsenic at levels that exceed the EPA-established action level in approximately 350 residential yards. ARCO has remediated these 350 residential yards by removing the top 18 inches of soil and

replacing it with clean soil and sod. ARCO has conducted soil tests in Opportunity and Crackerville. ARCO has performed soil remediation work on two properties owned by the Landowners. ARCO has conducted tests on domestic wells in Opportunity and Crackerville. ARCO has determined that two wells owned by the Landowners contain elevated levels of arsenic. ARCO replaced both wells.

The Landowners filed an action against ARCO in the Montana Second Judicial District Court on April 17, 2008. That action seeks compensation for property damage caused by pollution from the Anaconda Smelter. The Landowners have asserted state law claims against ARCO for negligence, nuisance, trespass, constructive fraud, unjust enrichment, and wrongful occupation of real property. The Landowners' damage claims include claims for restoration damages that seek to recover the costs required to restore the soil and groundwater on their properties. (Doc. 15-10 at 16).

The Landowners have submitted a proposed restoration plan in support of their claims for restoration damages. The proposed restoration plan describes the restoration work the Landowners believe is necessary to properly restore their properties. The proposed restoration plan includes soil and groundwater restoration work not contemplated by the EPA's cleanup plan. The Landowners estimate that

their proposed restoration remedy will cost between $38 million and $101 million. (Doc. 1-4 at 28, Doc. 23-4 at 5).

ARCO has challenged the Landowners' claims for restoration damages in the state court action via affirmative defenses and a motion for summary judgment. (Docs. 15-3, 15-9 at 2). ARCO argues in its motion for summary judgment that § 113(h) of CERCLA prohibits the Landowners' claims for restoration damages. (Doc. 15-3). ARCO argues that § 113(h) operates to bar the Landowners' claims for restoration damages because the Landowners' proposed restoration plan constitutes an impermissible challenge to the EPA's selected cleanup plan for the Anaconda Smelter Superfund Site. *Id*.

ARCO filed the present action on December 22, 2015, approximately 7 1/2 years after the Landowners filed their state court action against ARCO. ARCO seeks in this action, the very same relief that it requests in its motion for summary judgment filed in state court. ARCO requests that this Court: (1) declare that § 113(h) of CERCLA prohibits the restoration plan proposed by the Landowners in state court because it constitutes an impermissible challenge to the EPA's selected remedy for the Anaconda Smelter Superfund Site, and (2) enjoin the Landowners from pursuing their proposed restoration plan in state court. (Doc. 1 at 6).

The Landowners have moved to dismiss ARCO's claims for declaratory and injunctive relief on several grounds. First, the Landowners argue that ARCO's claims should be dismissed for lack of subject matter jurisdiction. Second, the Landowners argue that even if the Court possesses subject matter jurisdiction, the Court should abstain from exercising jurisdiction under *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 495 (1942), in light of the parallel proceedings in state court. Third, the Landowners argue that ARCO's claims are barred by the applicable statute of limitations. Fourth, the Landowners argue that ARCO's complaint fails to state a claim upon which relief may be granted.

The parties also have filed cross-motions for summary judgment. The cross-motions for summary judgment address a single issue. The parties request the Court to determine as a matter of law whether § 113(h) of CERCLA bars the restoration plan proposed by the Landowners in state court.

## DISCUSSION

### A. **Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction**

ARCO alleges that this Court possesses federal question jurisdiction under 28 U.S.C. § 1331, and diversity jurisdiction under 28 U.S.C. § 1332. (Doc. 1 at 6-7). The Landowners argue that no subject matter jurisdiction exists.

#### a. **Federal Question Jurisdiction**

ARCO presents its claim for declaratory relief as a defense to the Landowners' claims for restoration damages in state court. ARCO urges this Court to declare that CERCLA bars the Landowners' claims for restoration damages.

When a plaintiff asserts a claim for declaratory relief in federal court "that is in the nature of a defense to a . . . pending [state court] action, the character of the . . . pending [state court] action determines whether federal question jurisdiction exists with regard to the declaratory judgment action." *Levin Metals Corp. v. Parr-Richmond Terminal Co.*, 799 F.2d 1312, 1315 (9th Cir. 1986). If a federal question appears in the complaint of the pending state court action, federal jurisdiction exists over the declaratory judgment action. *Chase Bank USA, N.A. v. City of Cleveland*, 695 F.3d 548, 554 (6th Cir. 2012). If no federal question appears in the complaint of the pending state court action, no federal question exists over the declaratory judgment action. *Id; Alton Box Bd. Co. v. Esprit De Corp.*, 682 F.2d 1267, 1274 (9th Cir. 1982) (no federal question exists over declaratory judgment action where the declaratory judgment plaintiff seeks to "preclude the declaratory judgment defendant from successfully litigating against the declaratory plaintiff a claim arising under state law").

State common law governs the Landowners' claims for restoration damages in the state court action. The Landowners assert Montana law based claims for

negligence, nuisance, trespass, constructive fraud, unjust enrichment, and wrongful occupation of real property. Given that the Landowners' state court complaint seeks no relief under federal law, no federal question exists in this case with respect to ARCO's claims for defensive declaratory relief. *See Dave v. Crowell & Moring LLP*, 2010 WL 1848147 *9-10 (C.D. Cal. May 4, 2010). Judge Lynch properly determined that no federal question jurisdiction exists in this case.

### b. Diversity Jurisdiction

The diversity statute, 28 U.S.C. § 1332, gives federal courts original jurisdiction exists over "all civil actions" where the matter in controversy exceeds the sum of $75,000, and complete diversity of citizenship exists between the parties. 28 U.S.C. § 1332(a). The diversity jurisdiction applies generally to any claim, whether created by state or federal law, so long as the requirements of Section 1332 are satisfied, and the claim is cognizable in state court. *Gottlieb v. Carnival Corporation*, 436 F.3d 335, 340 (2nd Cir. 2006); *Landsman & Funk PC v. Skinder-Strauss Associates*, 640 F.3d 72, 79-80 (3rd Cir. 2011); *Radil v. Sanborn Western Camps, Inc.*, 384 F.3d 1220, 1225 (10th Cir. 2004) (a federal court may not exercise diversity jurisdiction over a claim that is not cognizable in state court); *see also McKenzie v. Hawaii Permanente Medical Group*, 29 F. Supp. 2d 1174, 1177 (D. Haw. 1998).

Here, it is undisputed that the parties are of diverse citizenship, and that the amount in controversy exceeds $75,000. The Court is aware of no legal authority that would make ARCO's claim for declaratory relief non-cognizable in state court. The Landowners have presented no such authority. The Landowners concede that ARCO's claim for declaratory relief could be brought in state court as a counterclaim to their claim for restoration damages. (Doc. 52 at 12). For these reasons, the Court concludes that it does possess diversity jurisdiction in this matter.

B.     **Abstention**

The Landowners argue that this Court nevertheless should decline to exercise jurisdiction based upon the factors set forth in *Brillhart*. Federal district courts possess discretion to dismiss a declaratory judgment action, even if the action otherwise satisfies the requirements for subject matter jurisdiction. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 281 (1995).

The Supreme Court in *Brillhart* identified three factors to be considered by a federal court in determining whether to accept a declaratory judgment action:    (1) the federal court should avoid needless determination of state law issues; (2) the federal court should discourage litigants from filing declaratory actions as a means of forum shopping; and (3) the federal court should avoid duplicative litigation. *See*

*R.R. Street & Co. Inc. v. Transport Ins. Co.*, 656 F.3d 966, 975 (9th Cir. 2011).

The factors gleaned from *Brillhart* are not exhaustive. *Wilton*, 515 U.S. at 282. The Ninth Circuit has identified other factors that may be considered: whether the declaratory action will settle all aspects of the controversy; whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue; whether the declaratory action is being sought merely for the purposes of procedural fencing or to obtain a *res judicata* advantage; or whether the use of a declaratory action will result in entanglement between the federal and state court systems.

The federal court also may consider the convenience of the parties and the availability and relative convenience of other remedies. *Government Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 n. 5 (9th Cir. 1998). The Ninth Circuit has recognized that where "there are parallel state proceedings involving the same issues and parties pending at the time the federal declaratory action is filed, there is a presumption that the entire suit should be heard in state court." *Dizol*, at 1225. Application of the *Brillhart* factors confirms that this Court should decline exercising jurisdiction in this case.

        **a.** **<u>Avoiding Needless Determinations of State Law</u>**

The first *Brillhart* factor directs federal courts to avoid making needless determinations of state law. *Dizol*, 133 F.3d at 1225. The Landowners base their claims for restoration damages upon state common law. ARCO has asserted an affirmative defense to the Landowners' claims for restoration damages based upon federal law. Given that diversity of citizenship provides the sole basis for subject matter jurisdiction in this declaratory action, the first *Brillhart* factor would be neutral. The Ninth Circuit has stated that when the "sole basis of jurisdiction is diversity of citizenship, the federal interest is at its nadir." *Continental Casualty Co. v. Robsac Indus.*, 947 F.2d 1367, 1371 (9th Cir. 1991).

### b. Discouraging Forum Shopping

The second *Brillhart* factor seeks to discourage the use of the declaratory judgment procedure as a means to forum shop. *Dizol*, 133 F.3d at 1225. This factor primarily addresses "reactive" declaratory judgment suits. *Robsac Indus.*, 947 F.2d at 1371.

The timing of the present declaratory action proves suspect. ARCO filed this declaratory action at a time when the underlying state court action had been pending for over seven years. The second *Brillhart* weighs in favor of declining jurisdiction.

### c. Avoiding Duplicative Litigation

The third *Brillhart* factor seeks to avoid duplicative litigation. *Robsac Indus.*, 947 F.2d at 1373. This factor focuses on whether the issues in this case are, or could be, addressed in the state proceeding. *Id*.

The issue to be determined in this action is whether § 113(h) of CERCLA bars the Landowners' claims for restoration damages. The identical issue is pending before the state court on ARCO's motion for summary judgment. (Doc. 15-3). ARCO presented the issue to the state court for determination on May 20, 2013, more than two years before this action was filed. The state court is equally capable of deciding the issue. Given that ARCO first presented the issue to the state court for determination, the third *Brillhart* factor weighs in favor of declining jurisdiction.

### d. Other Factors

Two other factors identified by the Ninth Circuit weigh in favor of declining jurisdiction. First, further prosecution of this declaratory action could lead to an entanglement between the federal and state court systems. This Court and the state court potentially could reach disparate conclusions regarding whether CERCLA bars the Landowners' claims for restoration damages. Second, further prosecution of this declaratory action will not settle all aspects of the underlying state court action. The declaratory relief sought by ARCO in this case relates only to the Landowners' claims for restoration damages. The Landowners have asserted

damage claims in the state court action that would remain viable even if ARCO were to prevail in this action. The Court finds no compelling reason to exercise jurisdiction in this case.

## CONCLUSION

I agree with Judge Lynch that the Landowners' Motion to Dismiss should be granted. I adopt Judge Lynch's Findings and Recommendations for the reasons described above.

Accordingly, IT IS HEREBY ORDERED:

1. Defendants' Motion to Dismiss (Doc. 14-1) is GRANTED.

2. All other pending motions (Doc. 14-2, 21 and 33) are DENIED as moot.

3. This case is DISMISSED without prejudice.

4. The Clerk is directed to enter judgment accordingly.

DATED this 15th day of February, 2017.

_____
Brian Morris
United States District Court Judge